

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2008

# USA v. Wilson

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Wilson" (2008). *2008 Decisions.* Paper 1042.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1042

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-5082

———————

UNITED STATES OF AMERICA

v.

DEION L. WILSON,

Appellant

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 06-cr-00097)
District Judge: Hon. Terrence F. McVerry

———————

Submitted Under Third Circuit LAR 34.1(a)
March 13, 2008

Before:  FUENTES, CHAGARES, and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>.

(Filed:   June 9, 2008)

———————

OPINION OF THE COURT

———————

CHAGARES, Circuit Judge.

Deion L. Wilson appeals the judgment entered by the District Court after a jury found Wilson guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). Wilson contends that the District Court erred in: (1) admitting evidence that currency was found in Wilson's motel room and that Wilson used counterfeit drugs to purchase the firearm in question; and (2) excluding evidence offered under Federal Rule of Evidence 807. Because we find that the District Court properly considered and ruled on the contested evidence, we will affirm the District Court's judgment.

I.

As we write only for the parties, our summary of the facts is brief. In the summer of 2005, Wilson allegedly obtained a nine millimeter Taurus handgun from Delfine Bredniak, in exchange for counterfeit drugs. On February 9, 2006, Wilson checked into a motel in Washington, Pennsylvania, where a housekeeper, Rebecca Grandon, saw the gun in Wilson's room. The motel contacted the Pennsylvania state police, who determined that Wilson was prohibited from possessing firearms because of his criminal history. The police then obtained a search warrant and went to the motel. A search of Wilson's room revealed a large black jacket with the loaded Taurus, jeans with $87 in a pocket, and another pair of jeans containing $1700. Wilson identified the pants and currency as belonging to him, but disclaimed ownership of the jacket and gun. DNA evidence

2

subsequently indicated that Wilson had worn the jacket.

On March 14, 2006, a grand jury in the Western District of Pennsylvania returned a one-count indictment against Wilson, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). Prior to his September 2006 jury trial in the United States District Court for the Western District of Pennsylvania, Wilson filed *in limine* motions to prohibit the introduction of evidence of drugs and a large amount of cash found in Wilson's motel room and of the alleged transaction during which Wilson traded counterfeit drugs for the firearm at issue. The District Court granted Wilson's motion in regard to the drugs, but allowed the admission of evidence of the cash and firearm transaction. The court also denied a motion by Wilson to introduce hearsay evidence at trial pursuant to Federal Rule of Evidence 807. A jury found Wilson guilty, and the District Court sentenced him to 262 months imprisonment on December 8, 2006. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we will affirm.

## II.

Wilson first asserts that the District Court improperly admitted evidence that currency was found in Wilson's motel room and that Wilson used counterfeit drugs to purchase the nine millimeter Taurus. We review a district court's decision to admit or exclude evidence for abuse of discretion, United States v. Retos, 25 F.3d 1220, 1227 (3d Cir. 1994), and determine that no such abuse of discretion occurred in this case.

Wilson argues that under <u>United States v. Sampson</u>, 980 F.2d 883, 886 (3d Cir. 1992), "before a district court can admit evidence of prior bad acts," it must determine whether the evidence is relevant to the defendant's propensity to commit the crime and consider whether the probative value of the evidence outweighs its prejudicial effect. Appellant Br. at 12. Wilson contends that the District Court should have characterized the presence of cash in the room as evidence of a prior bad act and therefore applied <u>Sampson</u>'s balancing test. In fact, the District Court did conduct an on-the record balancing test concerning the cash, and determined that the potential of prejudice was outweighed by the probative value of that particular evidence.[1] Moreover, the court properly concluded that the evidence of possession of the currency–not a crime itself–was relevant under Federal Rule of Evidence 401, permitting the Government to make a spatial relationship argument with regard to the cash claimed by Wilson and the nearby firearm. <u>See</u> Appendix (App.) 71.

Wilson also argues that the District Court improperly admitted evidence that Wilson obtained the Taurus from Delfine Bredniak by trading what was purported to be drugs for the gun. He asserts that the court erred in finding this alleged exchange to be direct evidence of a transaction that resulted in the Taurus being transferred to Wilson

---

[1] The District Court incorrectly stated that "the Court does *not* find that the potential of prejudice to the defendant is outweighed by the probative value of that particular evidence." App. 71-72 (emphasis added). It is evidence from the subsequent actions taken by the District Court in admitting the evidence that the proper test was applied and either the District Court misspoke or the record is incorrect.

two or three months prior to its discovery in his motel room. Wilson argues that because the court did not characterize Bredniak's testimony as evidence of a prior bad act, it failed to conduct the requisite Rule 404(b) balancing test. We disagree. Bredniak's testimony related to Wilson's initial procurement of the firearm he was charged with possessing; therefore, Rule 404(b) was not implicated. See United States v. Gibbs, 190 F.3d 188, 217 (3d Cir. 1999) ("Rule 404(b) . . ., does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense."). As the District Court explained, it allowed Bredniak's testimony "because it was relevant regarding the circumstances of how and when Wilson initially came into possession of the firearm." United States v. Wilson, 2006 WL 2924787 at *2 (W.D. Pa. 2006). Furthermore, "[t]he government did not emphasize the drug-related aspect of the transaction at all at trial," nor did Wilson object during Bredniak's testimony, instead "vigorously cross-examin[ing] Bredniak regarding inconsistencies between Bredniak's trial testimony that Wilson provided him with real drugs and Bredniak's testimony that he had received counterfeit drugs from Wilson." Id.

## III.

Additionally, Wilson contends that the District Court's decision to exclude the testimony of Wilson's private investigator was wrong. Wilson sought to introduce evidence that a private investigator hired by Wilson had phone conversations with a local bartender, Renee Russell. Russell allegedly informed the investigator that Rebecca

5

Grandon, the housekeeper who saw Wilson's gun at the motel, had a personal relationship with Wilson that soured and Grandon wished to get even with Wilson. Because Russell rebuffed Wilson's subpoena attempts, Wilson moved to admit his investigator's account of Russell's alleged phone statements. The District Court excluded the private investigator's testimony as inadmissible hearsay under Federal Rule of Evidence 807 because it could not "find any . . . circumstantial guarantees of trustworthiness." App. 243.[2] A district court's finding "on the question whether hearsay possesses the guarantees of trustworthiness required by Rule 807 is reviewed for clear error." United States v. Wright, 363 F.3d 237, 246 (3d Cir. 2004). The record reflects no clear error, and we will uphold the District Court's determination.

The Rule 807 residual hearsay exception is "to be used only rarely, and in exceptional circumstances," and is meant to "apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." United States v. Bailey, 581 F.2d 341, 347 (3d Cir. 1978) (addressing the old residual hearsay exceptions contained in Rules 803(24) and 804(b)(5), which were combined and transferred to the new Rule 807 in 1997). In assessing the guarantees of

---

[2] As the residual hearsay exception, Rule 807 permits the admission of hearsay evidence possessing "circumstantial guarantees of trustworthiness," if the trial court determines that: "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Fed. R. Evid. 807.

trustworthiness, factors to consider include whether: (1) the declarant was known and named; (2) the statement was made under oath; (3) the declarant knew his assertions were subject to cross-examination; (4) the statement was based on personal knowledge; (5) the declarant had motivation to lie; (6) the statement was corroborated; and (7) the declarant was qualified to make the assertion. See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 113 (3d Cir. 2001). Here, the declarant did not make the statement under oath, nor could the court be certain that the person on the other end of the phone actually was Renee Russell. Moreover, as the District Court noted, Wilson's counsel never asked Rebecca Grandon during cross-examination whether she was familiar with an individual named Russell. Before the District Court, Wilson's primary argument in favor of admission of the private investigator's testimony was that Renee Russell had "no reason to lie," App. 240, and he now argues that a person "speaking to a stranger about a matter in which they have no involvement or interest, will generally make truthful statements." Appellant's Br. at 28. This is not an "exceptional guarantee of trustworthiness."

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

_____